UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

      v.                                                                       Criminal No. 5:02-cr-22-gwc-1

Selwyn Mills

**REPORT AND RECOMMENDATION**
(Docs. 59, 67)

Defendant Selwyn Mills, proceeding *pro se*, has moved pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct a sentence imposed upon him by this Court in 2002. (Doc. 59.) Mills was convicted by a plea of guilty to a Superseding Information charging him with one count of engaging in a conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846 (Doc. 31), and was sentenced to a term of 70 months in prison to be followed by a three-year term of supervised release (Doc. 46). Mills satisfied the custodial portion of his sentence, and in approximately February 2009, jurisdiction over his term of supervised release was transferred to the United States District Court for the Northern District of New York (NDNY). (Doc. 58.)

In the pending § 2255 Motion, Mills challenges the custodial portion of his 2002 sentence, even though he has already served the required term. He also objects to a 2012 supervised release proceeding that concluded with the NDNY determining that Mills violated the terms of his supervised release by committing new, unrelated

crimes for which he was convicted in the Commonwealth of Pennsylvania Court of Common Pleas.

For the reasons explained below, I recommend that Mills's § 2255 Motion (Doc. 59) be DENIED, as the claims raised therein are time-barred, moot, procedurally barred, and lacking in substantive merit. I further recommend that the government's pending Motion to Transfer or Dismiss (Doc. 67) be DENIED as moot.

## Background

### I. Proceedings in the District of Vermont

This case began on February 19, 2002, when a Criminal Complaint was filed in the District of Vermont charging Mills and his codefendant, Jennifer Sutter, with engaging in a conspiracy to distribute cocaine base and heroin in violation of 21 U.S.C. § 846, and possession with intent to distribute cocaine base and heroin in violation of 21 U.S.C. § 841(a)(1). (Doc. 1.) Counsel was appointed for Mills pursuant to the Criminal Justice Act. (Doc. 4.) Thereafter, Mills entered into a written Plea Agreement with the government wherein he agreed to waive his right to proceed by indictment and plead guilty to a criminal information charging him with engaging in a conspiracy to distribute cocaine in violation of 21 U.S.C. § 846. (Doc 31.)

On August 15, 2002, Mills appeared before United States District Judge J. Garvan Murtha and waived his right to proceed by indictment. (Doc. 33.) Mills pleaded guilty to the Superseding Information pursuant to Rule 11 of the Federal Rules of Criminal Procedure. Judge Murtha accepted Mills's guilty plea, and ordered

the preparation of a presentence report (PSR) in anticipation of sentencing. (Doc. 34.)

Soon thereafter, a PSR was submitted to the Court. The PSR concluded that Mills's sentencing guideline range with respect to imprisonment was 72–87 months, based on an adjusted offense level of 23 and a criminal history category of IV. (PSR at 15, ¶ 72.) The offense level quantity calculation was determined using cocaine base instead of powder cocaine because, as noted in the PSR, Mills and his coconspirator had distributed 5–20 grams of cocaine base. (PSR at 5, ¶ 18.)

On December 16, 2002, Mills appeared before Judge Murtha for sentencing and was sentenced to a 70-month term of imprisonment, to be followed by a three-year term of supervised release. (Doc. 46.) No direct appeal was filed.

## II.    Proceedings in the NDNY

Mills served the custodial portion of his sentence and began his term of supervised release on April 9, 2007. (Doc. 57 at 1.) In approximately February 2009, jurisdiction over Mills's supervised release was transferred from the District of Vermont to the NDNY pursuant to 18 U.S.C. § 3605. (Doc. 58.)

About 10 months later, on November 16, 2009, the United States Probation Office for the NDNY submitted a petition to the New York court, advising that Mills had violated conditions of his supervised release by engaging in drug use and traveling out of the district without permission. (Doc. 67-1 at 1.) Mills admitted to the drug use violation and was sentenced to an additional 10 months in prison, to be followed by a two-year term of supervised release. (*Id.*) Mills was released from the

Bureau of Prisons on December 4, 2011 to commence his second term of supervised release. (*Id.*)

Less than a year later, on August 28, 2012, the United States Probation Office for the NDNY submitted a second petition to the New York court, advising that Mills had again violated conditions of his supervised release, this time by failing to report a change of address, traveling outside the jurisdiction to Pennsylvania, and committing new criminal conduct in Pennsylvania for which he was arrested on August 3, 2012. He was still in the custody of the Commonwealth of Pennsylvania when the NDNY ordered the issuance of an arrest warrant for Mills on August 30, 2012 for the violations. (*Id.* at 2–3.) (*See* Doc. 67-1 at 2–3.) In an apparent reference to these Pennsylvania charges, Mills alleges in his § 2255 Motion that he is now serving "a mandatory 6 ½ to 13 year[] sentence toward his instant offense charges." (Doc. 59 at 8.) The relevant docket sheet from the Court of Common Pleas of Berks County, Pennsylvania indicates that on August 27, 2013, Mills was convicted of numerous offenses including a felony drug offense for which he was sentenced to 6 and a half to 13 years. Docket at 3–5, *Commw. of Penn. v. Mills*, No. CP-06-CR-004783-2012 (Pa. Commw. Ct. 2016), https://ujsportal.pacourts.us/DocketSheets/CPReport.ashx?docketNumber=CP-06-CR-0004783-2012 (last visited Jan. 30, 2018). On April 11, 2014, the United States Marshal's Service lodged a detainer with the Pennsylvania correctional authorities based on Mills's 2012 violation warrant. (Doc. 67-2.)

4

Years later, on October 13, 2017, the NDNY issued a Writ of Habeas Corpus *Ad Prosequendum* compelling the production of Mills in that court to face the 2012 supervised release violation allegations. (Doc. 67-3.) Docket entries reveal that Mills appeared in that court on November 16, 2017, at which time counsel was appointed and Mills waived his right to a preliminary examination. *United States v. Mills*, N.D.N.Y. Case No. 1:08-cr-00721-LEK. About two weeks later, on November 30, an amended supervised release petition was filed, alleging that Mills: (1) committed new criminal conduct; (2) traveled outside the judicial district without permission; and (3) failed to report a change of address to his supervising probation officer. *Mills*, Case No. 1:08-cr-00721-LEK (N.D.N.Y. Nov. 30, 2017), ECF No. 15. On December 7, 2017, a final revocation hearing pursuant to Fed. R. Crim. P. 32.1 was held in the NDNY. *Id.*, ECF No. 17. Mills, represented by counsel, admitted guilt to the violations and was sentenced to 14 months' imprisonment, to run consecutive to his Pennsylvania state court sentence, and to be followed by a 12-month term of supervised release with special conditions. *Id.*, ECF No. 18.

### III.    Mills's § 2255 Motion

Mills filed the instant § 2255 Motion in this Court on September 1, 2017. (Doc. 59.) Therein, he raises a number of claims, focusing centrally on the relationship between his Pennsylvania sentence and custody, and his inability to obtain a hearing in the NDNY regarding the then–pending supervised release violation petition. In Ground One, Mills contends that his failure to receive a hearing on his supervised release violation amounts to a violation of his Fifth

5

Amendment right to due process of law. (*Id.* at 5.) In Ground Two, Mills asserts that he is "under multiple judgment[]s subjecting him to serve an extended period of time in prison," in violation of the Eighth Amendment's prohibition on cruel and unusual punishment. (*Id.* at 6.) In Ground Three, Mills asserts that the detainer has caused him to be denied "certain privileges or programs of treatment in rehabilitation," in violation of his right to due process of law under the Fifth Amendment. (*Id.* at 7–8.) In Ground Four, Mills brings a double jeopardy claim under the Fifth Amendment, apparently contending that his exposure to a supervised release violation regarding conduct for which he was convicted in state court amounts to double jeopardy. (*Id.* at 9.) For relief, Mills seeks to have the original sentence imposed in the District of Vermont vacated, set aside, or corrected. (*Id.* at 13.)

On October 16, 2017, approximately six weeks after filing the § 2255 Motion, Mills filed an untitled document seeking to add an additional claim under the Fifth Amendment and the Fair Sentencing Act of 2010 (Ground Five). (Doc. 66.) Specifically, Mills appears to assert in this supplemental filing that the 100:1 penalty ratio between offenses involving cocaine base and powder cocaine is "unreasonable" and a violation of his right to due process of law under the Fifth Amendment. (*Id.*)

On October 30, 2017, the government filed a Motion to Transfer or Dismiss Mills's § 2255 Motion, arguing that the matter should be transferred to the NDNY because this Court "has no authority to hear the matter." (Doc. 67 at 1.) Alternatively, the government argues that the matter should be dismissed without

6

prejudice so Mills can pursue whatever relief may be available to him in the court having jurisdiction over the supervised release violation. (*Id.*) In addition, the government asserts that Mills's Motion fails on its merits because Mills is not "in custody" within the meaning of § 2255 (*id.* at 5),[1] and because the Interstate Agreement on Detainers does not apply to detainers based on violations of supervised release (*id.* at 6–8).

## Discussion

Mills's claims appear to fall within two categories: those challenging the length of his sentence in the District of Vermont, and those seeking a hearing on his supervised release violation in the NDNY. The government correctly asserts that this Court lacks jurisdiction to hear the claims challenging proceedings that took place in the NDNY. Even so, a preliminary examination of the merit of Mills's Motion reveals that it is time-barred, moot, procedurally barred, and contrary to law. I therefore recommend that the Court undertake a substantive review of the Motion rather than transferring it to the NDNY.

### I.   Standards Governing § 2255 Motions

A prisoner in federal custody may move "to vacate, set aside[,] or correct" his sentence on the ground that his sentence (1) was "imposed in violation of the Constitution or laws of the United States," (2) was issued by a court that did not have jurisdiction, (3) was in excess of the lawful maximum, or (4) "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Relief under § 2255 is "generally

---

[1] Because of Mills's most recent supervised release conviction, the government's argument that Mills is not in federal custody appears moot.

7

available . . . only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

To obtain relief under § 2255 for a constitutional error, Mills must prove the error had substantial and injurious effect or influence on the criminal proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993). To obtain relief under § 2255 for a non-constitutional error, Mills must demonstrate "a fundamental defect [in the criminal proceedings,] which inherently result[ed] in a complete miscarriage of justice." *Reed v. Farley*, 512 U.S. 339, 348 (1994) (quoting *Hill*, 368 U.S. at 428). Because Mills is proceeding *pro se*, this Court reads his pleadings "liberally and interpret[s] [them] to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks omitted).

## II. Venue

As stated above, Mills has filed his Motion in the wrong jurisdiction. 28 U.S.C. § 2255(a) provides: A petitioner "may move the court *which imposed the sentence* to vacate, set aside[,] or correct the sentence." (Emphasis added.) Most of the claims in Mills's Motion focus on his inability to obtain a hearing on his supervised release violation in the NDNY. Thus, the proper venue for the Motion is the District Court for the NDNY, "the court which imposed the sentence." *Id.* Although the Motion could be transferred there or dismissed without prejudice so

Mills can pursue relief there, *see* 28 U.S.C.A. § 1631, courts have "considerable discretion in deciding whether to transfer a case in the interest of justice," *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 435 (2d Cir. 2005). In *Daniel*, 428 F.3d at 435–36, the Second Circuit cited with approval a Seventh Circuit case, *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999), which held that, in order to determine whether transfer would be in the interest of justice, a court that lacks jurisdiction can "take a peek at the merits" of the underlying action. The rationale for this approach is to avoid "rais[ing] false hopes and wast[ing] judicial resources by transferring a case that is clearly doomed, for example because the statute of limitations had already run when the case was initially filed." *Phillips*, 173 F.3d at 610.

As discussed below, Mills's Motion faces significant procedural and substantive hurdles that would make transfer a waste of judicial resources.

### III.   Statute of Limitations

To the extent that Mills challenges his 2002 District of Vermont sentence, his Motion is time-barred. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes a one-year period of limitation for § 2255 motions. Under 28 U.S.C. § 2255(f), the limitations period begins from the latest of:

> (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting

the claim or claims presented could have been discovered through the exercise of due diligence.

Mills does not explain why any provision other than the first one should apply here.[2] Therefore, § 2255(f)(1) governs, and the statute of limitations began to run when the judgment of Mills's federal conviction in Vermont became final. That judgment was filed on December 17, 2002. (Doc. 46.) Mills had 14 days from that date to file a notice of appeal, i.e., until December 31, 2002. Fed. R. App. P. 4(b)(1)(A)(i). No appeal was filed, however, and the limitations period expired. Mills did not file the instant Motion until almost 15 years later.

Equitable tolling of the statute of limitations for an untimely § 2255 motion may be available in "extraordinary circumstances." *Baldayaque v. United States*, 338 F.3d 145, 150 (2d Cir. 2003).The Second Circuit has a high standard for what constitutes "extraordinary circumstances." *Dillon v. Conway*, 642 F.3d 358, 363 (2d Cir. 2011). "[A] garden variety claim of excusable neglect, . . . and the usual problems inherent in being incarcerated are insufficient to warrant equitable tolling." *Woodason v. United States*, Nos. 13 Civ. 2020(DLC), 10 Cr. 1156(DLC), 2014 WL 657529, at *1 (S.D.N.Y. Feb. 20, 2014) (internal quotation marks and citation omitted). A nexus, or causal relationship, must also exist between the extraordinary circumstances and the lateness of filing. *Rivera v. United States*, 448 F. App'x 145, 146 (2d Cir. 2011).

---

[2] Mills states that his claims have been discovered "through the exercise of due diligence toward the use of Mahoney law library." (Doc. 66.) However, § 2255(f)(4) clearly refers to the date on which the "facts" supporting the claims presented could have been discovered through due diligence, and Mills offers no facts in his Motion to challenge his sentence in the District of Vermont.

Not only does Mills fail to argue that equitable tolling should save his untimely Motion, he also fails to offer evidence of any extraordinary circumstances that could have affected the timeliness of his Motion. He merely states that "[Mills] is serving a[n] out of state prison sentence. [He] ha[s] a future appearance in this court for [a] probation/supervise[d] release violation. [Application of the] statute of limitation[s] should not be warranted due to the lack of due process and the Interstate Agreement on Detainers." (Doc. 59 at 12.) Basically, Mills argues that he did not bring a timely claim because he was incarcerated in state prison. *Id*. These circumstances are not sufficiently "extraordinary" under Second Circuit standards. *See Baldayaque*, 338 F.3d at 152.; *see also Belot v. Burge*, 490 F.3d 201, 207–08 (2d Cir. 2007) (petitioner not entitled to equitable tolling where he could have filed an "unpolished" but timely petition). Therefore, Mills's claim with respect to his sentence in the District of Vermont is time-barred and does not warrant equitable tolling.

IV. **Mootness**

Even if Mills's Motion was not time-barred, it is moot because Mills has already served his 2002 sentence, and he has already received his revocation of supervised release hearing. "Mootness is a jurisdictional matter relating to the Article III requirement that federal courts hear only 'cases' or 'controversies.'" *Blackwelder v. Safnauer*, 866 F.2d 548, 550 (2d Cir. 1989) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). A case is moot "when the issues presented are no longer 'live' or the parties 'lack a legally cognizable interest in the outcome.'" *Id.*

11

at 551 (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)). "[M]ootness is not fixed at the time of filing but must be considered at every stage of the habeas proceeding." *Nowakowski v. New York*, 835 F.3d 210, 217 (2d Cir. 2016).

### A.     Length of Sentence (Ground Five)

In his supplemental filing, Mills challenges the length of his sentence in the District of Vermont under the Fair Sentencing Act of 2010 (FSA), Pub. L. No. 111-220, 124 Stat. 2372 (2010) (Ground Five). (*See* Doc. 66.) But Mills has already served this sentence to completion; thus there is no longer any controversy for the Court to resolve and the claim should be dismissed as moot. *See Califano v. United States*, No. 00CV0543SJ, 2005 WL 1379018, at *1 (E.D.N.Y. June 7, 2005) ("[W]here the only relief sought by a petitioner is release from incarceration and the petitioner has been released, with the result that the Court can no longer provide the relief sought in the petition, the petition must be dismissed as moot."); *Guzman v. United States,* Nos. 05 Civ. 2691(RMB)(AJP), 99 Crim. 1036(RMB), 2007 WL 1821698, at *1 (S.D.N.Y. June 26, 2007) (§ 2255 motion "entirely directed to sentencing issues" determined moot where defendant had served his entire prison sentence).

Mills further claims in his supplemental filing that, under the FSA, a 100:1 ratio between offenses involving cocaine base and powder cocaine is no longer the standard, and therefore his right to due process was violated because he served a longer sentence than necessary. (Doc. 66.) But again, Mills was sentenced in 2002, long before the FSA's effective date of August 3, 2010; and the FSA does not retroactively apply to defendants like Mills who were convicted and sentenced before

12

its enactment. *See United States v. Diaz*, 627 F.3d 930, 931 (2d Cir. 2010) (per curiam) ("[T]he FSA contains no express statement that it is intended to have retroactive effect nor can we infer such intent from its language[; thus], the FSA cannot be applied to reduce Appellant's sentence because . . . he was convicted and sentenced before the FSA was enacted."); *United States v. Gotay*, No. 09 Cr. 165(ILG), 2012 WL 3318954, at *2 (E.D.N.Y. Aug. 10, 2012) (Although pre-FSA law under which defendant was sentenced is now recognized "to have imposed unnecessarily and unfairly severe mandatory sentences," "short of the Supreme Court revising its view of the general savings statute, only Congress can make the FSA fully retroactive and provide relief to those languishing in prison as a result of pre-FSA law." (internal quotation marks omitted)).  Therefore, Mills's FSA claim is not only moot, it also fails on the merits.

### B.     Failure to Receive a Hearing (Ground One)

Mills asserts that his failure to receive a hearing in the NDNY on his supervised release violation abridges his right to due process of law.  (Doc. 59 at 5.) The claim is moot, however, because, as noted above, on December 7, 2017, a hearing was held in that district regarding the petition alleging Mills's supervised release violation.  *Mills*, N.D.N.Y. Case No. 1:08-cr-00721-LEK, ECF No. 17.

To the extent that Mills challenges the timeliness of the hearing on his supervised release violation, the claim fails on its merits because Mills does not have a constitutional right to a prompt hearing for a supervised release violation.  *See Moody v. Daggett*, 429 U.S. 78, 86 (1976); *Mack v. Nelson*, 455 F. Supp. 690, 691 (D.

13

Conn. 1978) ("It is clear that a parolee imprisoned for a crime committed while on parole generally does not have a constitutional right to an immediate parole revocation hearing."); *Carchman v. Nash*, 473 U.S. 716, 732–33 (1985) ("[T]he most serious of the interests of the accused in obtaining a speedy disposition of outstanding criminal charges—the interest in limit[ing] the possibilities that long delay will impair [his] ability . . . to defend himself—is unlikely to be strongly implicated in the probation-violation detainer context.  Indeed, it often may be desirable to delay rather than to expedite disposition of the probation-violation charge." (all but the first alterations in original) (internal citations and quotation marks omitted)).

## V.  Procedural Bar

In addition to being time-barred and moot, Mills's Motion is also procedurally barred because Mills has not appealed the claims alleged therein.  If a petitioner has not directly appealed his conviction, a § 2255 motion is procedurally barred unless it is based on constitutional or jurisdictional claims, or would result in a "complete miscarriage of justice."  *Johnson v. United States*, 313 F.3d 815, 817 (2d Cir. 2002).  Mills has demonstrated neither a valid constitutional claim, nor that a "complete miscarriage of justice" would result if his Motion is denied.

## VI.  Merits of Mills's Claims

Finally, not only is Mills's Motion time-barred, moot, and procedurally barred, it also fail on the merits.  As discussed above, Grounds One and Five fail, respectively, because (1) the FSA does not apply to Mills (Ground Five), and (2) Mills

14

does not have a constitutional right to a prompt hearing on the revocation of his supervised release (Ground One). Mills's remaining claims also fail, for the reasons explained below.

### A.     Double Jeopardy (Ground Four)

Mills contends he was exposed to double jeopardy because he faced a future revocation hearing "on the same transaction" for which he had already served a sentence. (Doc. 59 at 9.) Because of the procedural deficiencies discussed above, in order to prove this claim, Mills must first show: (1) cause and prejudice to excuse his procedural default; or (2) actual innocence (factual innocence). *Bousley v. United States*, 523 U.S. 614, 622 (1998). Mills has made neither of these showings. Moreover, he did not raise a double jeopardy issue on direct appeal; nor could he have, as he was convicted of the crimes which gave rise to his supervised release violation.[3] Nonetheless, a substantive examination of the claim reveals that it fails on the merits.

Although unclear, Mills's double jeopardy claim apparently refers to either the relationship between his original sentence in the District of Vermont and his current federal sentence in the NDNY, or the relationship between his Pennsylvania state sentence and his current federal sentence. Either way, the claim is meritless for two reasons: first, his sentences were imposed by different sovereigns; and second, he is not experiencing multiple punishments for the same offense.

---

[3] Docket at 3–5, *Commw. of Penn. v. Mills*, No. CP-06-CR-004783-2012 (Pa. Commw. Ct. 2016), https://ujsportal.pacourts.us/DocketSheets/CPReport.ashx?docketNumber=CP-06-CR-0004783-2012 (last visited Jan. 30, 2018).

15

### i. Dual Sovereignty

The Double Jeopardy Clause does not prohibit successive prosecutions for the same act by two different sovereigns that "draw their authority to punish the offender from distinct sources of power." *Heath v. Alabama*, 474 U.S. 82, 88 (1985); *see United States v. Giovanelli*, 945 F.2d 479, 491 (2d Cir. 1991) ("[T]he double jeopardy clause's protection only applies in instances where the same sovereign is responsible for the successive prosecutions."). This rule is founded on the principle that, "[w]hen a single act violates the laws of two sovereigns, the wrongdoer has committed two distinct offenses." *United States v. Davis*, 906 F.2d 829, 832 (2d. Cir. 1990). Accordingly, "a state prosecution does not bar a subsequent federal prosecution of the same person for the same act[,]" and vice versa. *United States v. Coonan*, 938 F.2d 1553, 1562 (2d Cir. 1991) ("The dual sovereignty doctrine essentially recognizes that prosecutions under the laws of separate sovereigns do not, in the language of the Fifth Amendment, subject [the defendant] for the same offence to be twice put in jeopardy." (alteration in original) (internal quotation marks omitted).

As noted above, in 2002, Mills was sentenced by the District of Vermont for conspiracy to distribute cocaine. (Doc. 46.) He was later sentenced to two subsequent violations of supervised release in the NDNY, one of which arose from state charges in the Commonwealth of Pennsylvania. (Doc. 67-1); *Mills*, N.D.N.Y. Case No. 1:08-cr-00721-LEK, ECF No. 15. Mills's sentences were executed by

16

different sovereigns, Pennsylvania and the United States. As a result, Mills's double jeopardy claim fails.

### ii. Multiple Punishments

The double jeopardy claim also fails because Mills has not been subjected to multiple punishments for the same offense. The Fifth Amendment's Double Jeopardy Clause provides that no person shall be "subject for the same offense to be twice put in jeopardy of life and limb." U.S. Const. amend. V. This protection against multiple punishments is "designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984). Thus, "the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Id.* To this end, Congress has expressly authorized federal sentencing courts to impose a term of supervised release as a part of the sentence for a felony or misdemeanor where a term of imprisonment is imposed. 18 U.S.C. § 3583(a). A court may "revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute *for the offense that resulted in such term of supervised release . . . .*" *Id.* at § 3583(e)(3) (emphasis added); *see Johnson v. U.S.*, 529 U.S. 694, 700 (2000) ("Where the [offenses] are criminal in their own right, they may be the basis for separate prosecution, which would raise an issue of double jeopardy if the revocation of supervised release were also punishment for the same offense. *Treating postrevocation sanctions as part of the penalty for the*

17

*initial offense, however (as most courts have done), avoids these difficulties.*" (emphasis added)).

Here, Mills's sentence for violating supervised release punishes him for a different offense than the offenses underlying both his initial 2002 sentence and his later state sentence in Pennsylvania. Thus, he has not been subjected to multiple punishments for the same offense, and his double jeopardy claim fails on this basis.

### B. Interstate Agreement on Detainers Violation (Ground Three)

Referring generally to the Interstate Agreement on Detainers Act (IADA), Mills contends that his detainer prevented him from "be[ing] granted certain privileges or programs of treatment in rehabilitation within the institution of reform." (Doc. 59 at 7–8); *see also* Interstate Agreement on Detainers Act, 18 U.S.C. App'x 2, Pub. L. No. 91-538, 84 Stat. 1397 (1970). Federal courts have held, however, that supervised release violation detainers fall outside the provisions of the IADA. *See Carchman v. Nash*, 473 U.S. 716, 725 (1985) ("A probation-violation charge, which does not accuse an individual with having committed a criminal offense in the sense of initiating a prosecution, . . . does not come within the terms of [the IADA]."); *United States v. Brown*, 480 F. App'x 417, 419 (7th Cir. 2012) (IADA inapplicable to probation-violation detainers). And the Second Circuit expressly found that a claim based on a violation of the IADA does not fall within the purview of 28 U.S.C. § 2255. *Edwards v. United States*, 564 F.2d 652, 653 (2d Cir. 1977). Therefore, there is no merit to this claim.

### C.     Multiple Judgments (Ground Two)

Mills claims he is currently under "multiple judgment[]s subjecting him to serve an extended period of time in prison, significantly increasing . . . his punishment," in violation of the Eighth Amendment prohibition on cruel and unusual punishment. (Doc. 59 at 6.) He explains that he is "in present custody under both judg[]ment[s], not merely the one imposing the first sentence." (*Id.*) Mills does not specify which judgment(s) he refers to, nor does he offer any facts in support of a constitutional violation. Therefore, the claim fails.

## VII.  Evidentiary Hearing

When ruling on a § 2255 motion, the district court is required to hold a hearing, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). A hearing is therefore not required when the movant's allegations are "vague, conclusory, or palpably incredible." *Machibroda v. United States*, 368 U.S. 487, 495 (1962) ("The language of [§ 2255] does not strip the district courts of all discretion to exercise their common sense. Indeed, the statute itself recognizes that there are times when allegations of facts outside the record can be fully investigated without requiring the personal presence of the prisoner."); *see Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001) ("It was . . . within the district court's discretion to choose a middle road that avoided the delay, the needless expenditure of judicial resources, the burden on trial counsel and the government, and perhaps the encouragement of other prisoners to make similar baseless claims that would have resulted from a full testimonial hearing.").

Mills's § 2255 Motion makes only vague and conclusory allegations that are unsupported by the relevant law, as discussed above. The Motion, along with the files and records of the case, conclusively show that Mills is not entitled to relief; thus no hearing is required.

## Conclusion

Based on the foregoing, I recommend that the Court DENY Mills's § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Doc. 59). In light of this conclusion I further recommend that the Court DENY the government's Motion to Transfer or Dismiss Mills's Petition (Doc. 67). I also recommend that the Court refrain from issuing a certificate of appealability, as Mills has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . [in a § 2255 proceeding] only if the applicant has made a substantial showing of the denial of a constitutional right.").

Dated at Burlington, in the District of Vermont, this 5th day of February 2018.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).